Property Address: 5187 Llano Dr., Woodland Hills CA, 91364 _____   Date: _____

    **(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold **(a)** "AS-IS" in its PRESENT physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.
   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials (_____) (_____)            Seller's Initials (_____) (_____)



**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**

Property Address: 5187 Llano Dr., Woodland Hills CA, 91364                                        Date: _____

    E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

  A. **SELLER HAS: 7 (or 10 ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

  B. **(1) BUYER HAS: 17 (or 30 ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

    **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

    **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ___ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

    **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

    **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or 30 ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

  C.   **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

  D. **SELLER RIGHT TO CANCEL:**

    **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

  E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or 5 ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

  F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

  G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or imme ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

  H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _____ ) ( _____ )                               Seller's Initials ( _____ ) ( _____ )



RPA-CA REVISED 12/15 (PAGE 6 OF 10)

        **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Property Address: 5187 Llano Dr., Woodland Hills CA, 91364  Date: _____

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or   7  ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
  **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
  **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
  **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance    (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.
  **ESCROW HOLDER ACKNOWLEDGES MINISTERIAL DUTY ONLY; NO DISCRETION OR LIABILITY ATTACHES TO ESCROW HOLLDER. ALL PROCEDURAL LAND EXECUTIONAL LLIABILITY IS EXPRESSELY ASSUMED BY COREY SCOTT PRESLEY ESTATE BANK & TRUST**

Buyer's Initials ( /s/ ) ( _____ )  Seller's Initials ( _____ ) ( _____ )   
**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Property Address: 5187 Llano Dr., Woodland Hills CA, 91364 _____ Date: _____

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

21. **REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _____ / _____    Seller's Initials _____ / _____

22. **DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _____ / _____    Seller's Initials _____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _____ ) ( _____ )    NOTHING HEREIN LIMITS BUYER'S RIGHT TO FILE FOR EMERGENCY EX PARTE RELIEF UPON DENAIL OF LAWFUL TENDER.    Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

CERTIFICATION OF COMPLIANCE TO FEDERAL STATUES, IF AT ATTACHED, SHALL BE INCORPORATED HEREIN BY REFERENCE AND IS BINDING ON ALL PARTIES.

Property Address: 5187 Llano Dr., Woodland Hills CA, 91364 _____  Date: _____

    **(2) PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    **(3) BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance wth the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:
  A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
  B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
  C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
  D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
  E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
  F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
  G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
  H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
  I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
  J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
  K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
  L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
  M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by _____ ☐ AM/☐ PM, on _____ (date)). See attached Addendum for clarification that Buyer shall assume responsibility for all customary costs of closing.

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 09-18-2025  BUYER _Presley_ _signature_  VCC 1-308
(Print name) Presley, Corey S.
Date _____  BUYER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _____ ) ( _____ )



RPA-CA REVISED 12/15 (PAGE 9 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Property Address: 5187 Llano Dr., Woodland Hills CA, 91364            Date: 09-18-2025

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** _____.

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____
(Print name) _____
Date _____ SELLER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _____  CalBRE Lic. # _____
By Tyson Leon-Guerrero _____  CalBRE Lic. # 02150974  Date _____
By _____  CalBRE Lic. # _____  Date _____
Address _____  City _____  State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Real Estate Broker (Listing Firm) _____  CalBRE Lic. # _____
By _____  CalBRE Lic. # _____  Date _____
By _____  CalBRE Lic. # _____  Date _____
Address _____  City _____  State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder Bank of America _____  Escrow # _____
By _____  Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement ( _____ ) ( _____ )
Buyer's Initials

Reviewed by _____
Broker or Designee

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Form Made Fillable by eForms

ADDENDUM TO PURCHASE AGREEMENT

1    Page _____    Date: 09-18-2025
2
3    This addendum to the Purchase Agreement dated 09-18-2025 pertains to the purchase of the property
4    located at 5187 Llano Dr., Woodland Hills CA, 91364 _____ (herein the "Property"). If any conflict
5    exists between the terms of this addendum and any terms contained elsewhere in this Purchase Agreement, the terms of
6    this addendum shall supersede and take precedence.  Buyer and Seller understand that this is a legally binding Purchase
7    Agreement.  If either party desires legal or tax advice, they should consult an appropriate professional.
8
9    **As-Is Sale:** Buyer accepts the Property "As-Is."  Any warranties of physical condition of the Property contained in this
10   Purchase Agreement are void.  Seller shall have no further responsibility or liability with respect to the condition of the
11   Property.  This provision shall survive delivery of the deed.
12
13   **Inspection:** Buyer shall have the right and duty to inspect the Property or have it inspected by a person of Buyer's choice
14   at Buyer's expense.  This Purchase Agreement is subject to Buyer completing an inspection and ratifying this Purchase
15   Agreement by removing this contingency in writing prior to closing, based upon the inspection.  The inspection may
16   include, but is not limited to, Buyer's contractors confirming repair estimates.  Promptly after signing this Purchase
17   Agreement, Seller shall provide keys, alarm codes, gate codes, and garage door openers to Buyer.  Seller allows Buyer to
18   place a lock box on the Property in order to facilitate access for contractors, partners, lenders, renters, or buyers.  In order
19   to facilitate a timely inspection process, and since certain contractors require that the Property be vacant while
20   inspections are being performed, Seller shall ensure the Property is vacated during the times provided by Buyer.  If Buyer
21   elects to have a pest inspection, Buyer shall notify Seller in writing and Seller shall provide Buyer with a pest inspection
22   clearance letter from a pest inspection company of Buyer's choice.
23
24   **Other:** Buyer and Seller shall use a settlement company of Buyer's choice to close this transaction.  If any earnest money
25   is included in this Purchase Agreement, it may be deposited with the settlement company before closing at Buyer's option.
26   If Buyer defaults on this Purchase Agreement for any reason, Seller's sole remedy shall be to retain the earnest money.  If
27   closing is delayed by Seller, Seller shall pay Buyer a per diem penalty of one hundred dollars.  Buyer may extend the
28   closing date an additional thirty days, without the need for an amendment, by delivering written notice and one hundred
29   dollars to Seller.  Buyer shall have the right to make a pre-closing inspection of the Property to determine that the
30   Property is in the same condition as of the date of this Purchase Agreement.  Any material change to the Property prior to
31   closing shall entitle Buyer to cancel this Purchase Agreement by providing a written unilateral cancellation notice to
32   Seller.  Buyer shall have the right to make a pre-closing inspection of the Property to ensure it is vacant without tenants
33   or occupants of any kind.  Closing shall be automatically extended, without the need for an amendment, until tenants or
34   occupants vacate the Property.  Seller shall not continue to show the Property nor negotiate, receive, or accept back-up
35   offers.  Seller shall be responsible for any pending, levied, or certified assessments prior to closing.  If an inspection report
36   is required by the municipality in which the Property is located, either Buyer or Seller may schedule the inspection and
37   Seller shall be responsible for the payment of any required inspection fees.  If the municipality in which the Property is
38   located charges or assesses vacant building fees, Seller shall be responsible for any such charged, pending, levied, and/or
39   certified fees.  If any open permits exist for the Property, Buyer may require Seller to have such permits closed by the
40   appropriate city inspectors in a timely manner.  Any cancellations, as provided in this Purchase Agreement, must be in
41   writing and delivered to the other party in a timely manner.  Any references to, or calculation of, days in this Purchase
42   Agreement shall be considered business days and not calendar days, unless specifically stated otherwise.

Page _____   Date: 09-18-2025

**Seller's Personal Property at the Property** (Check ONE)

☐ Seller shall remove all personal property and leave the Property in "broom-clean" condition prior to closing.

☐ Seller may leave any personal property currently at the Property for disposal by Buyer. Seller shall not add any additional items to the Property. Neither Seller nor Buyer assume any responsibility or liability for any personal property left at the Property after closing and Buyer may dispose of items as Buyer sees fit. Seller shall sign a "Bill of Sale" at closing reflecting the "As-Is" sale of any personal property to Buyer for the payment of one dollar by Buyer.

**Seller's Closing Costs** (Check ONE)

☐ Seller shall pay Seller's customary closing costs.

☐ Buyer shall pay Seller's customary closing costs. This does NOT include; delinquent taxes, tax pro-rations, assessments, vacant building fees, judgments, foreclosure redemption fees, utility service bills, other liens, or commissions due to real estate brokers retained by Seller.

**Buyer's Closing Costs** (Check ONE)

☒ Buyer shall pay Buyer's customary closing costs.

☐ Seller shall pay Buyer's customary closing costs.

**Buyer acknowledges that an escrow reserve buffer in the amount of thirty-five percent (35%) above the purchase price has been structured into the funding instruments. This buffer shall be applied to cover all transactional fees, escrow costs, title insurance, government-mandated compliance, and any miscellaneous seller-side obligations. Seller shall net the full purchase price without offset.**

**Contingent Closing Date** (OPTIONAL: Check ONE only if Property requires a "Code Compliance Inspection Report," otherwise leave blank.)   **SEE ATTACHED SETTLEMENT INSTRUCTIONS**

☐ Closing shall occur within _____ days of Buyer receipt of any inspection reports required by the municipality in which the Property is located.

☐ Closing shall occur within 5-7 days of Buyer receipt of a sale approval letter from the municipality in which the Property is located.

**Buyer Disclosures:** Buyer is a "for-profit" party and intends to make a profit on this transaction. Buyer is purchasing the Property below market value for that purpose. Buyer may rehab the Property and either sell it or rent it. Buyer may re-sell the Property "As-Is" to another buyer who may rehab the Property and either sell it or rent it. Buyer may assign its interest for a fee to another buyer without notification to, or approval from, Seller. An assignment by Buyer shall relieve Buyer of its obligations pursuant to this Purchase Agreement. In order to procure renters or buyers for Buyer's benefit, Buyer may advertise the Property during the executory period of this Purchase Agreement. Buyer may change the method of financing at no additional cost to Seller. In order to protect Buyer's financial privacy, Buyer is not allowed or required to provide Seller with verification of funds for any type of financing method used in this transaction. Buyer (and/or its principals, and/or assignees) is a licensed real estate broker but does not represent Seller in any agency, brokerage, or fiduciary capacity in this transaction.

Page _____   Date: 09-18-2025

**Seller Acknowledgements:** Seller has read, understands, and is fully satisfied with this Purchase Agreement. Seller is not confused about any aspect of this Purchase Agreement. Seller has willingly signed this Purchase Agreement and is not under duress. Seller has no physical, mental, or emotional conditions that adversely affect them in signing this Purchase Agreement. Seller is not under the influence of alcohol or any mind-altering substance. Seller is not taking medication that would cloud their judgment or render them unable to think clearly or make informed decisions. Seller understands that Buyer has negotiated on Buyer's own behalf and that Seller has negotiated on Seller's own behalf. Seller has not been promised anything other than what is contained in this Purchase Agreement. There are no verbal promises, side agreements, or other terms not contained in this Purchase Agreement. Buyer has not made any promises or agreements to; a) sell the Property back to Seller, b) lease it back to Seller with an option to buy, or c) otherwise have an ongoing business or contractual relationship with Seller regarding the Property. Seller understands that they are selling their Property and that this is not a loan or a lease. Seller understands that they may be selling the Property below market value but have chosen to do so because of a variety of reasons with regard to the Property and/or since the Seller's personal circumstances dictate that an immediate sale, even if at a discounted price, is preferable. Seller acknowledges that this Purchase Agreement has been fairly negotiated and meets their current objectives.

Seller: _____  Buyer: *[signed]* 09-18-2025
Seller's Signature        Date    Buyer's Signature        Date
                                   Presley, Corey S./trustee
Seller's Printed Name              Buyer's Printed Name

_____            *[signed]* 09-18-2025
Seller's Signature        Date    Buyer's Signature        Date
                                   Corey Scott Presley Estate Bank & Tr
Seller's Printed Name              Buyer's Printed Name

**LAW 553-CA-ARB-eps 3/23**

*[Handwritten annotations at top right: "Exhibit D", "See Attached STD-65 Purchase Order 2025 Land Rover only Auto"]*

FORM# 102591   DEAL# 91976   STORE# 692   STK# SA300625   CUST# 8033724

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

**Buyer Name and Address (Including County and Zip Code)**
COREY SCOTT PRESLEY LIVING ESTATE TRUST
21835 ERWIN STREET 1083
WOODLAND HILLS, CA 91367
Cell: 818-296-5143
Email: cs.pres@icloud.com

**Co-Buyer Name and Address (Including County and Zip Code)**
N/A
Cell: N/A
Email: N/A

**Seller-Creditor (Name and Address)**
JAGUAR LAND ROVER WOODLAND HILLS
22006 WEST ERWIN STREET
WOODLAND HILLS, CA 91367

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2025 | LAND ROVER RANGE ROVER | 17 | SALKPBE98SA300625 | Personal, family, or household unless otherwise indicated below ☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE — The cost of your credit as a yearly rate. | FINANCE CHARGE — The dollar amount the credit will cost you. | Amount Financed — The amount of credit provided to you or on your behalf. | Total of Payments — The amount you will have paid after you have made all payments as scheduled. | Total Sale Price — The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 0.00 % | $ 0.00 (e) | $ 172244.66 (e) | $ 172244.66 (e) | $ 172244.66 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| 1 | $ 172244.66 | MONTHLY 06/29/2025 beginning |
| N/A | $ N/A | N/A |
| One final payment | $ 172244.66 | 06/29/2025 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE
NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

|  | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | N/A Mos. | $ N/A |
| Medical N/A | N/A Mos. | $ N/A |
| N/A | N/A Mos. | $ N/A |

Total Vehicle Insurance Premiums $ N/A

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____ N/A _____
Seller X _[signature]_

---

**FOR PRESENTATION TO THE FEDERAL RESERVE BANK OF SAN FRANSISCO, FOR REDEMPTION, OR CONVERSION TO BOOK-ENTRY SECURITIES, IN ACCORDANCE WITH WRITTEN INSTRUCTIONS SUBMITTED BY BANK OF AMERICA, N.A. AND COREY S. PRESLEY, (A BANKING INSTITUTION UNDER 12 USC § 411), DATED 09-18-2025 (CFR § 328.7).**

[right column, partially cut off:]
...-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance
...yoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the
...ount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay
...dit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller
...assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance
...equires to effect the transfer of the Trade-In Vehicle to Seller or its designee.

Signature X __N/A__

CLOSURE
received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: __N/A__

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _[signature]_    Co-Buyer Signs X __N/A__

Buyer Signs X _[signature]_    Co-Buyer Signs X __N/A__

05/15/2025  02:30 pm
LAW 553-CA-ARB-eps 3/23 v1   Page 1 of 6

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   - A. Cash Price of Motor Vehicle and Accessories — $155573.00 (A)
     1. Cash Price Vehicle — $154075.00
     2. Cash Price Accessories — $1498.00
     3. Other (Nontaxable) Describe N/A — $ N/A
     4. Other (Nontaxable) Describe N/A — $ N/A
   - B. Document Processing Charge (not a governmental fee) — $85.00 (B)
   - C. Emissions Testing Charge (not a governmental fee) — $ N/A (C)
   - D. (Optional) Theft Deterrent Device(s)
     1. (paid to) N/A — $ N/A (D1)
     2. (paid to) N/A — $ N/A (D2)
     3. (paid to) N/A — $ N/A (D3)
   - E. (Optional) Surface Protection Product(s)
     1. (paid to) N/A — $ N/A (E1)
     2. (paid to) N/A — $ N/A (E2)
   - F. EV Charging Station (paid to) N/A — $ N/A (F)
   - G. Sales Tax (on taxable items in A through F) — $15176.66 (G)
   - H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) AVRS — $34.00 (H)
   - I. (Optional) Service Contract(s)
     1. (paid to) N/A — $ N/A (I1)
     2. (paid to) N/A — $ N/A (I2)
     3. (paid to) N/A — $ N/A (I3)
     4. (paid to) N/A — $ N/A (I4)
     5. (paid to) N/A — $ N/A (I5)
   - J. Prior Credit or Lease Balance (e) paid by Seller to N/A — $ N/A (J)
     (see downpayment and trade-in calculation)
   - K. Prior Credit or Lease Balance (e) paid by Seller to N/A — $ N/A (K)
     (see downpayment and trade-in calculation)
   - L. (Optional) Debt Cancellation Agreement or Guaranteed Asset Protection Waiver — $ N/A (L)
   - M. (Optional) Used Vehicle Contract Cancellation Option Agreement — $ N/A (M)
   - N. Other paid to N/A For N/A — $ N/A (N)
   - O. Other paid to N/A For N/A — $ N/A (O)
   - **Total Cash Price** (A through O) — $170868.66 (1)

2. **Amounts Paid to Public Officials**
   - A. Vehicle License Fees — $1011.00 (A)
   - B. Registration/Transfer/Titling Fees — $365.00 (B)
   - C. California Tire Fees — $ N/A (C)
   - D. Other N/A — $ N/A (D)
   - **Total Official Fees** (A through D) — $1376.00 (2)

3. Amount Paid to Insurance Companies (Total premiums from Statement of Insurance) — $ N/A (3)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee — $ N/A (4)

5. **Subtotal** (1 through 4) — $172244.66 (5)

6. **Total Downpayment**
   - A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): — $ N/A (A)
     Vehicle 1 $ N/A   Vehicle 2 $ N/A
   - B. Total Less Prior Credit or Lease Balance (e) — $ N/A (B)

**FOR PRESENTATION TO THE FEDERAL RESERVE BANK OF SAN FRANSISCO, FOR REDEMPTION, OR CONVERSION TO BOOK-ENTRY SECURITIES, IN ACCORDANCE WITH WRITTEN INSTRUCTIONS SUBMITTED BY BANK OF AMERICA, N.A. AND COREY S. PRESLEY, (A BANKING INSTITUTION UNDER 12 USC § 411), DATED _____ (CFR § 328.7).**

   - C. — $ N/A (C)
   - D. — $ N/A (D)
   - E. — $ N/A (E)
   - F. — $ N/A (F)
   - G. Other N/A — $ N/A (G)
   - H. Other N/A — $ N/A (H)
   - I. Cash, Cash Equivalent, Check, Credit Card, or Debit Card — $ N/A (I)
   - **Total Downpayment** (C through I) — $0.00 (6)
     (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J and/or 1K above)

7. **Amount Financed** (5 less 6) — $172244.66 (7)

Buyer Signs X /s/ Corey Presley   Co-Buyer Signs X N/A

---

**OPTIONAL DEBT CANCELLATION AGREEMENT OR GUARANTEED ASSET PROTECTION WAIVER.** A debt cancellation agreement or guaranteed asset protection waiver (GAP waiver) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation or a GAP waiver, the charge is shown in item 1L of the Itemization of Amount Financed. See your agreement for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A Name of Agreement

I want to buy a debt cancellation agreement or GAP waiver.

Buyer Signs X N/A

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

I1 Company N/A   Term N/A Mos. or N/A Miles
I2 Company N/A   Term N/A Mos. or N/A Miles
I3 Company N/A   Term N/A Mos. or N/A Miles
I4 Company N/A   Term N/A Mos. or N/A Miles
I5 Company N/A   Term N/A Mos. or N/A Miles

Buyer X N/A

**Trade-In Vehicle(s)**

1. Vehicle 1
   Year N/A   Make N/A
   Model N/A   Odometer N/A
   VIN N/A
   a. Agreed Value of Property — $ N/A
   b. Buyer/Co-Buyer Retained Trade Equity — $ N/A
   c. Agreed Value of Property Being Traded-In (a–b) — $ N/A
   d. Prior Credit or Lease Balance — $ N/A
   e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) — $ N/A

2. Vehicle 2
   Year N/A   Make N/A
   Model N/A   Odometer N/A
   VIN N/A
   a. Agreed Value of Property — $ N/A
   b. Buyer/Co-Buyer Retained Trade Equity — $ N/A
   c. Agreed Value of Property Being Traded-In (a–b) — $ N/A
   d. Prior Credit or Lease Balance — $ N/A
   e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) — $ N/A

**Total Agreed Value of Property Being Traded-In (1c+2c)** — $ N/A *
**Total Prior Credit or Lease Balance (1d+2d)** — $ N/A *
**Total Net Trade-In (1e+2e)** — $ N/A *
(*See item 6A–6C in the Itemization of Amount Financed)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A, Year N/A.

SELLER'S INITIALS N/A

05/15/2025  02:30 pm
LAW 553-CA-ARB-eps 3/23 v1   Page 2 of 6

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**FOR PRESENTATION TO THE FEDERAL RESERVE BANK OF SAN FRANSISCO, FOR REDEMPTION, OR CONVERSION TO BOOK-ENTRY SECURITIES, IN ACCORDANCE WITH WRITTEN INSTRUCTIONS SUBMITTED BY BANK OF AMERICA, N.A. AND COREY S. PRESLEY, (A BANKING INSTITUTION UNDER 12 USC § 411), DATED _____ (CFR § 328.7).**

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

Buyer Signs X _____  Co-Buyer Signs X **N/A** _____

d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
   Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - The vehicle is lost, damaged, or destroyed; or
   - You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

05/15/2025  02:30 pm
*LAW 553-CA-ARB-eps 3/23 v1*   Page 3 of 6